**JONES, ESTATE OF, In Re**

Probate Court of Franklin Co

No 83817
Decided April 3, 1939

Arthur L. Rowe, Columbus.
Carl Valentine, Columbus.

**OPINION**

By McCLELLAND, J.

This matter comes on to be heard upon the motion of the administrator of the estate of Allen H. Jones, deceased, to remove from his office the person appointed to ascertain the value of the provisions made by will for the spouse of the deceased, and the value of the interest which the spouse might have in the property of the deceased under the laws of descent and distribution.

It will be necessary that we state chonologically the essential facts which have been developed in this hearing. The facts are as follows:

Allen H. Jones and Bertha Jones were husband and wife, and living together as such on April 2, 1936, at which date a guardian was appointed for both because of mental incompetency found by the Probate Court to exist on the part of both of them.

On August 21, 1938, Allen H. Jones, the husband, died, leaving a last will and testament, which was admitted to probate on September 13, 1938.

On December 28, 1938, the guardian of Bertha Jones resigned, and Arthur L. Rowe was appointed as the successor guardian. On January 3, 1939, the guardian of Bertha Jones. together with the administrator of the estate of Allen H Jones appeared in the Probate Court of Franklin County, Ohio, and called to the Court's attention the fact that the surviving spouse, Bertha Jones, was incompetent and unable to make an election in her own behalf. In pursuance of that suggestion, the Court, on January 16, 1939, appointed J. Weller Igo as the person to investigate and make a report as authorized by §10504-63 GC. On the same day, the administrator of the estate of Allen H. Jones filed an action in the Probate Court of Franklin County, Ohio, to construe the will of the deceased. On February 10, 1939, the administrator of the estate of Allen H. Jones resigned, and a successor administrator was appointed. J. Weller Igo accepted the appointment above referred to and qualified. On January 26, 1939, Bertha Jones died, and an administrator of her estate was appointed and qualified on January 30, 1939.

It appears from the record that Allen H. Jones died leaving his incompetent spouse and two daughters by a former marriage as his sole and only next of kin. The administrator de bonis non with the will annexed of Allen H. Jones has filed the above mentioned motion to dismiss J. Weller Igo, for the reason that the incompetent spouse made no election to take under the will or under the law during her lifetime, and that by reason of her death she is conclusively presumed to have taken under the will. The particular statutes with which we have to deal in this matter are as follows:

"Sec. 10504-55—Election by Surviving Spouse:—After the probate of the will and filing of the inventory, appraisement and schedule of debts, the pro-bate court on the motion of the executor or administrator, or on its own motion, forthwith shall issue a citation to the surviving spouse, if any, to elect whether to take under the will or under the statute of descent and distribution; but in the event of election to take under the statute of descent and distribution, such spouse shall take not to exceed one-half of the net estate. Such election shall be made not later than one month after service of the citation to elect, or if no citation has been issued, within nine months after the appointment of the executor or administrator or the further time allowed by the court therefor for good cause shown, on motion filed before the expiration of such period, and when made shall be entered upon the minutes of the court."

"Sec. 10504-60—Failure To Make Election: Presumption:—If the surviving spouse fails to make such election in person or by written instrument, or dies, at any time before the expiration of the time limit provided by law without having made such election, such spouse shall be conclusively presumed to have elected to take under the will and such spouse who fails to elect and the heirs, devisees and legatees of such spouse who dies without having elected and those claiming through or under them shall be bound accordingly, and persons may deal with the property of the decedent in accordance therewith.

"Sec. 10504-63—Election Made By One Under Legal Disability, How:—When because of unsound mind, or other legal disability, the surviving spouse is unable to make an election, as soon as the facts come to the knowledge of the probate court, at any time within the time allowed by law for election, it shall appoint some suitable person to ascertain the value of the provision made for such spouse in lieu of the provisions made by law, and the value of the rights by law in the estate of the deceased consort."

"Sec. 10504-64—Entry:—On the return of the report of the person appointed to make such investigation, the

court shall determine whether the provision made by the testator for the surviving spouse, in the will or the provision by law, is better for such spouse, and shall elect accordingly. It shall thereupon record upon its journal the election for such spouse under disability, by virtue of the proceeding herein provided, which election, when so entered, shall have the same force and effect as an election made by one not under such disability.

"Sec. 10504-58—Election Time Extended:—When proceedings for advice, or to contest the validity of a will, are begun within the time allowed by law for making the election, if the will is not set aside, the election, may be made within three months after the final disposition thereof."

It is apparent from the record that the above statutes have been complied with as far as possible fully to protect the interests of the surviving spouse. The only issue therefore in this case is whether the death of the incompetent spouse within the time limit for making election raises the presumption that she shall take under the will of her deceased husband.

Had the surviving spouse, Bertha Jones, been competent at the death of her husband, and remained so until her death, no question could have arisen because that circumstance would fall directly under the provisions of §10504-60 of the probate code. and she would have been conclusively presumed to have elected to take under the will. But she was not competent to make an election, and the court then invoked its authority under §10504-63, and appointed a person to determine what she would have under the will, and what she would have under the statute.

The record discloses that on the same day upon which Mr. Igo was appointed, an action was filed by the administrator to construe the will of Mr. Jones. This automatically extended the time for the election to any time within three months after the final disposition of the will construction case.

The surviving spouse died on January 26, 1939, without having made an election, or without any election having been made for her. It is the contention of the administrator that under that circumstance she is conclusively presumed to have elected to take under the will. In our opinion, the law does not, and will not, in any manner prejudice the rights of an incompetent person, but on the contrary, will fully protect the rights of that person. The court in this case could not have made an election because the information was not before it as to what she would receive under the law, or what she would receive under the will. The will had not yet been construed. An action therefor had been filed, but was pending in the court at the time of her death. Should it later appear that it would have been better for the surviving spouse to have elected to take under the law rather than under the will, would the law cut off her rights in the estate of her husband, simply because she died? When her death occured, she was in no better position to make an election, nor was she in any less an advantageous position to make an election than she was when living and incompetent. In our opinion, the fact of her death should be ignored and such election should be made as would have been had she remained competent.

Upon an examination of the statute, we are compelled to come to the conclusion that §10504-60 applies solely to a competent surviving spouse, and that §10504-63 applies solely to an incompetent spouse, and that §10504-58 applies to both.

The Supreme Court of Ohio has rendered a most interesting opinion in the case of Ambrose v Rugg, Admrx., 123 Oh St 434. The facts in that case are somewhat different from those in the case at bar, but in our opinion the same principles of law apply. In the

case just cited, it is disclosed that the testator died on December 8, 1928, leaving a will, by the terms of which he bequeathed to his widow stock and money in the sum of approximately $5000.00. The will was admitted to probate on January 15, 1929, and, on the same day, the widow was found to be incompetent by reason of mental disability, and a guardian was appointed. She died on March 15, 1929. Between the date of the appointment of a guardian and the date of her death, the court's attention was called to the fact of her incompetency, but the court did not act upon that suggestion and her death ensued without anyone being appointed to ascertain what she would receive under the will and what she would receive under the law. In the body of the opinion, the court uses the following significant language:

"Provision is made by §§10574 and 10575, GC, for the ascertainment of the relative value of the provisions made by law and by will, when, because of unsound mind, the widow or widower of a testator is unable to make an election. These provisions, however, are of no avail because of the fact that the widow died about two months subsequent to the probate of the will and before the court had acted upon the suggestion of the guardian of said widow as to proceeding under the provisions or such statute. The widow, being of unsound mind, was unable to make an election. The situation in that respect was no different after her death than it was before. It is conceded that her mental disability continued until her death. An election by her was impossible. In that event, should not a court of equity determine whether the provision made for her by law was more valuable and better than the provision made by will, and, if it so find, direct that election be entered in her behalf to receive the benefit of the provision which is more favorable to her interest? The mere statement of the proposition suggests that the rights and interests of a mentally incompet-

ent person should be safeguarded, and that opportunity should be accorded to secure for her or her estate the same legal benefits and advantages as would accrue to a widow of sound mind. What is hers under the law should not be lost by reason of her mental condition. Surely the hand of equity may intervene for her protection." * * *

"In the case we have here, had the widow continued to live, and had she continued mentally incompetent, she would not have been concluded by the provisions of §10571, GC, and the court would have been fully authorized to enter an election in her behalf. Her death having intervened before that action was taken, how can it be "deemed that she elected to take under the will?" No opportunity having been afforded to exercise the privilege of election— to make a choice between two alternatives, the provisions of the law and the provisions of the will—the same reasoning supports the view that the court may determine which is the most advantageous to her interests, in this instance to her estate, and enter an order of distribution in accordance with such finding." * * *

The court discusses decisions of courts of other states in support of its position taken in the case at that time, and, by using the same argument that the court used in the Rugg case, how can it be presumed that Mrs. Jones elected to take under the will when she still remained incompetent, and if the time for election had not yet elapsed.

As we have heretofore stated the death of Mrs. Jones neither added to nor detracted from the rights which the law gave her Her rights are protected by the statute above referred to, in that the court having proper information, must make the election for her. If the court is specifically authorized to make an election before death, it certainly is authorized under the principles of equity to make the election after her death.

We therefore must come to the conclusion that it is still the court's duty, notwithstanding the death of Bertha Jones, to enter an election for her at the proper time.

Counsel for the administrator has also taken the position that the person appointed to ascertain the value of the property which she would take under the will, and what she would take under the law, is an agent for Mrs. Jones, and, that therefore, by virtue of her death, the agency is extinguished. With this contention we cannot agree. Mr Igo, the appointee, is the agent of the court under the statutory authority, and the court is not the agent of Mrs. Jones in making the election. The court is a special officer of the law to make an election which an incompetent person could not make, and we must of course hold that the contention of the administrator in that respect is untenable.

It is therefore ordered that the motion of the administrator to remove Mr. J. Weller Igo will be overruled, and an order may be drawn accordingly.

C. P. McCLELLAND, Probate Judge.